UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

SHANE CHRISTOPHER BUCZEK,

                Plaintiff,

v.

ANTHONY BRUCE, ET AL. and
JOHN AND JANE DOES 1-20,

                Defendants.

**DECISION AND ORDER**
09-CV-1129S

## I. INTRODUCTION

Presently before this Court is Defendants' Motion to Dismiss Plaintiff Shane C. Buczek's amended complaint, which essentially asserts malicious prosecution and false arrest claims under Bivens against numerous employees of the United States Attorney's Office in the Western District of New York. For the following reasons, Defendants' motion will be granted and all other pending motions denied as moot.

## II. BACKGROUND

Buczek is a criminal defendant before this Court in three separate cases. On March 5, 2010, a jury convicted Buczek of committing bank fraud and committing a crime in violation of the terms of his pretrial release. (See United States v. Buczek, 09-CR-121S.) Twenty days later, Buczek pled guilty to one count of contempt of court (see United States v. Buczek, 09-CR-141S) and one count of possession of a false identification document with intent to use to defraud the United States (see United States v. Buczek, 08-CR-54S). On November 5, 2010, this Court sentenced Buczek to concurrent terms of imprisonment in each case, which essentially resulted in a sentence of 33 months imprisonment and five years of supervised release.

Defendant Anthony Bruce is an Assistant United States Attorney. He and other members of the United States Attorney's Office investigated, indicted, and prosecuted Buczek. Buczek's amended complaint sets forth what purport to be nine claims against the defendants. But stripped of its implausible and nonsensical allegations — which run from Bruce forcing him to relocate, to Bruce being subject to "impeachment," to Bruce being an "unregistered Foreign Agent operating illegally in our De-jure Republic" — Buczek's claims boil down to his allegations that Defendants falsely arrested and maliciously prosecuted him. Buczek's amended complaint focuses almost exclusively on Bruce; nowhere in the 38-page amended complaint does he allege any individual action on the part of any other defendant but Bruce. Buczek seeks recovery of $1.719 billion in damages.

Buczek subscribes to "tax protestor" or "redemption" theories, which relate to an individual's relationship with the law.

> [Redemption theory] propounds that a person has a split personality: a real person and a fictional person called the "strawman." The "strawman" purportedly came into being when the United States went off the gold standard in [1933], and instead, pledged the strawman of its citizens as collateral for the country's national debt. Redemptionists claim that government has power only over the strawman and not over the live person, who remains free. Individuals can free themselves by filing UCC financing statements, thereby acquiring an interest in their strawman. Thereafter, the real person can demand that government officials pay enormous sums of money to use the strawman's name or, in the case of prisoners, to keep him in custody. If government officials refuse, inmates are encouraged to file liens against correctional officers and other prison officials in order to extort their release from prison. Adherents of this scheme also advocate that inmates copyright their names to justify filing liens against officials using their names in public records such as indictments or court papers.

Monroe v. Beard, 536 F.3d 198, 203 n. 4 (3d Cir. 2008).

> Another tenet of the Redemptionist theory is that when the United States Government pledged the strawman of its citizens as collateral for the country's national debit, it created an "exemption account" for each citizen, identified by each person's Social Security number.  When citizens contract for debt, the theory goes, their debts are collateralized by their respective exemption accounts, essentially making the U.S. Government ultimately responsible for satisfaction of their debts.  Moreover, each citizens exemption account is virtually bottomless, meaning that those who understand this theory — and who file the appropriate UCC financing statements, and thereby become a free sovereign, a process known as "redemption," — never have to actually pay for anything.

McLaughlin v. Citimortgage, Inc., 726 F. Supp. 2d 201, 210 (D.Conn. 2010) (internal quotation marks and citations omitted).

Buczek's adherence to these theories is in part what caused him to run afoul of the law.  This Court has repeatedly rejected this brand of argument, including that this Court lacks jurisdiction, that Title 18 of the United States Code was never passed into law, and that this Court is simply an administrative court.

Buczek's instant action is of a similar variety.  He continues his assertions that he is "factually innocent," that "no real party and no actual original claim or charging instrument" was presented against him, and that defendants and other government actors are unregistered foreign agents "conspiring to mislead the American people." Buczek cites a number of disconnected federal statutes and regulations in support of these claims, but ultimately, his only cognizable claims are for false arrest and malicious prosecution, which Defendants maintain must be dismissed.

## III.  DISCUSSION

**A.     Legal Standard**

Rule 12 (b)(6) allows dismissal of a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12 (b)(6).  Federal pleading standards are generally not stringent: Rule 8 requires only a short and plain statement of a claim.  Fed. R. Civ. P. 8 (a)(2).  But the plain statement must "possess enough heft to show that the pleader is entitled to relief."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1966, 167 L.Ed.2d 929 (2007).

When determining whether a complaint states a claim, the court must construe it liberally, accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor.  ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). Legal conclusions, however, are not afforded the same presumption of truthfulness.  See Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)  ("the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Iqbal, 129 S.Ct. at 1945 (quoting Twombly, 550 U.S. at 570).  Labels, conclusions, or "a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555. Facial plausibility exists when the facts alleged allow for a reasonable inference that the defendant is liable for the misconduct charged.  Iqbal, 129 S.Ct. at 1949.  The plausibility standard is not, however, a probability requirement: the pleading must show, not merely allege, that the pleader is entitled to relief.  Id. at 1950; Fed. R. Civ. P. 8 (a)(2).  Well-

pleaded allegations must nudge the claim "across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

Courts therefore use a two-pronged approach to examine the sufficiency of a complaint, which includes "any documents that are either incorporated into the complaint by reference or attached to the complaint as exhibits." Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004). This examination is context specific and requires that the court draw on its judicial experience and common sense. Iqbal, 129 S.Ct. at 1950. First, statements that are not entitled to the presumption of truth — such as conclusory allegations, labels, and legal conclusions — are identified and stripped away. See Iqbal, 129 S.Ct. at 1950. Second, well-pleaded, non-conclusory factual allegations are presumed true and examined to determine whether they "plausibly give rise to an entitlement to relief." Id. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint fails to state a claim. Id.

For a pro se plaintiff like Buczek, these standards are viewed through a permissive prism, because "a document filed *pro se* is to be liberally construed, . . . , and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erikson v. Pardus, 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (internal quotation marks and citations omitted). Generally, courts will give a *pro se* plaintiff an opportunity to amend or to be heard before dismissal "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." Abbas v. Dixon, 480 F.3d 636, 639 (2d Cir.

2007) (quoting Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 796 (2d Cir. 1999) (per curiam)).

**B.     Analysis**

Bivens claims are judicially-created causes of action for money damages against federal actors who deprive individuals of constitutional rights.  See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388, 396-97, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); Higazy v. Templeton, 505 F.3d 161, 169 (2d Cir. 2007).  In large measure, Bivens claims are analogous to claims brought under 42 U.S.C. § 1983 against state actors and are governed by the same standards.  See Hartman v. Moore, 547 U.S. 250, 255 n. 2, 126 S.Ct. 1695, 164 L.Ed.2d 441 (2006); Tavarez v. Reno, 54 F.3d 109, 110 (2d Cir. 1995).

To maintain a Bivens action, a plaintiff must allege two principal elements: first, that the defendant deprived him or her of a right secured by the Constitution; second, that the defendant acted under color of federal law.  See Mahoney v. Nat'l Org. for Women, 681 F. Supp. 129, 132 (D.Conn. 1987) (citing Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 155-56, 98 S.Ct. 1729, 1732-33, 56 L.Ed.2d 185 (1978)).  "A Bivens action lies against a defendant only when the plaintiff can show the defendant's personal involvement in the constitutional violation."  Cohen v. Holder, No. 11-CV-3, 2011 WL 809773, at *2 (E.D.N.Y. Mar. 1, 2011).

To state a Bivens claim for false arrest in violation of the Fourth Amendment, the plaintiff must show that "(1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged."  Williams v. Young, No. 08 Civ. 8667, 2011 WL 724657, at *5 (S.D.N.Y. Feb. 25, 2011) (citing Singer v. Fulton County Sheriff, 63 F.3d

110, 118 (2d Cir. 1995)). Where an individual's arrest is effectuated pursuant to a warrant, there is no claim for false arrest. Singer, 63 F.3d at 118-19. Moreover, a conviction is "conclusive evidence" that probable cause existed for the arrest. Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996).

To state a Bivens claim for malicious prosecution, which also lies under the Fourth Amendment, a plaintiff must show that "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." Murphy v. Lynn, 118 F.3d 938, 947 (2d Cir. 1997).

Buczek's claims both fail. First, Buczek fails to allege individual conduct by any federal actors other than Bruce. Consequently, as to all defendants but Bruce, Buczek fails to state Bivens claims and his amended complaint must be dismissed as to them. See Cohen, 2011 WL 809773, at *2. Second, because it is beyond dispute that Buczek was convicted in each of the criminal cases brought against him, probable cause necessarily existed for his arrest, thereby foreclosing any claims for false arrest. See Weyant, 101 F.3d at 852. Third, also due to his convictions, Buczek cannot satisfy the second element of a malicious prosecution claim — that the proceedings terminated in his favor. See Murphy, 118 F.3d at 947.

In addition, Buczek's claims are barred by the United States Supreme Court's decision in Heck v. Humphrey, in which the Court held that a plaintiff could not bring a civil action if success in that action would necessarily call into question the validity of his conviction, unless that conviction first was reversed on direct appeal, expunged by executive order, or called into question by a federal court's issuance of a writ of habeas

corpus. 512 U.S. 477, 486-87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). This doctrine has been applied to Bivens actions. See Tavaris, 54 F.3d at 110. Accordingly, because Buczek's false arrest and malicious prosecution claims cannot be resolved in his favor without calling into question the validity of his convictions, they are barred by the Heck doctrine. See Lewis v. Bornstein, No. 3:09cv666, 2011 WL 336852, at *3 (D.Conn. Jan. 28, 2011) (finding that Heck bars false arrest and malicious prosecution Bivens claims).

If other claims can be gleaned from Buczek's amended complaint, they too must be dismissed. To the extent Buczek seeks to enjoin or dismiss the three criminal prosecutions, it is a "basic doctrine of equity jurisprudence that courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an equitable remedy at law and will not suffer irreparable injury if denied equitable relief." Younger v. Harris, 401 U.S. 37, 43-44, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Although Younger involved a case where a federal court was asked to enjoin a state court prosecution, the doctrine has been applied similarly to federal courts asked to enjoin federal criminal prosecutions. Miranda v. Gonzalez, 173 Fed.Appx. 840 (D.C. Cir. Feb. 12, 2006); Deaver v. Seymour, 822 F.2d 66, 69-70 (D.C. Cir. 1987); Traficant v. United States, No. 4:02CV188, 2002 WL 553724, at *3 (N.D. Ohio Feb. 1, 2002). Here, Buczek certainly has an adequate remedy at law to challenge his prosecution and convictions — direct appeal. Thus, to the extent Buczek seeks injunctive relief in relation to his criminal prosecutions, the request is denied.

To the extent Buczek presents claims based on Bruce's alleged violations of federal criminal statutes, which his amended complaint appears to suggest, they must be dismissed. Buczek lacks standing to bring criminal charges against Bruce. See Kunzer

v. Magill, 667 F. Supp. 2d 1058, 1061 (D. Minn. 2009) ("Simply stated, private citizens generally have no standing to institute federal criminal proceedings.") (collecting cases). Moreover, Buczek does not allege that any of the criminal statutes he cites create a private right of action, and indeed, they do not.  See, e.g., Dugar v. Coughlin, 613 F. Supp. 849, 852 and n. 1 (S.D.N.Y. 1985) (no private right of action under 18 U.S.C. §§ 241, 242, 2071); Frison v. Zebro, 339 F.3d 994, 998-1000 (8th Cir. 2003) (no private right of action for violation of proscription against impersonating federal officer under 18 U.S.C. § 912); Moore v. Fountainhead Garden Home Owners' Ass'n, Inc., No. C-97-1334-VRW, 1997 WL 337570, at *2 (N.D.Cal. June 4, 1997) (no private right of action under 18 U.S.C. §§ 912, 913); Ippolito v. Meisel, 958 F. Supp. 155, 167 (S.D.N.Y. 1997) (no private right of action to enforce federal perjury statutes, 18 U.S.C. § 1623); Prof'l Air Traffic Controllers Org. (PATCO) v. U.S. Dept. of Treasury, 529 F. Supp. 614, 616 (D.C. Minn. 1982) (plaintiff has no standing to enforce criminal penalties under 18 U.S.C. § 1918); Renkel v. U.S., 456 F.3d 640, 644 (6th Cir. 2006) (no private right of action under Convention Against Torture, 18 U.S.C. § 2340).  Accordingly, any claims based on violations of the criminal statutes set forth in the amended complaint are dismissed.

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss Plaintiff's amended complaint will be granted.  Further, in light of this disposition, all pending motions will be denied as moot.

## V. ORDERS

IT HEREBY IS ORDERED, that Defendants' Motion to Dismiss (Docket No. 8) is GRANTED.

FURTHER, that all other pending motions (Docket Nos. 12, 30, 39, 40, 41, 42, 45) are DENIED as moot.

FURTHER, that the Clerk of Court shall close this case.

SO ORDERED

Dated: May 19, 2011
Buffalo, New York

s/William M. Skretny
WILLIAM M. SKRETNY
Chief Judge
United States District Court